Ms. Jennings? Yes, good morning, Your Honor. May it please the Court, Your Honors, Deborah Jennings, on behalf of the appellants John Allen, Jr., LaJuan Allen, the estate of John Allen, Sr., along with my esteemed co-counsel, Ms. UA Lewis. We request five minutes for questions. Just a minute before we get into the facts. One thing that has me very concerned and I thought about having the panel send out a notice to counsel, but I thought it would get more complicated than it needed to be, but this is a very interesting procedural matter. I'm sorry that all the trial practice students aren't here for it. This was a 12b6 motion. After the 12b6 motion was filed, then the district judge was provided with body cam videos, or whatever they are, videos. Then the district judge ordered the videos to be given to plaintiffs, and plaintiffs received them. Then the district judge ruled referring to the videos, so it's become a summary judgment, not a 12b6 motion, and yet the videos aren't part of the record. Of course, it's the duty of the appellant to provide the items the appellant wants in the appellant record. In your brief, you requested that you be allowed to supplement with authenticated copies of the videos reviewed by all parties before submission to the court. So this is matters outside the record, and I just don't know where we go with this. Normally, if you don't provide something in the record, we can't consider it, but yet the district judge relied on it in his summary judgment ruling. So what's the solution here? The solution, your honor, you pinpointed the very issue that's before this court. That is, we were confronted with a situation where the video was, at the initial conference, was to be delivered to the plaintiff. Instead, the court intercepted and asked that that video be produced to the court only. And so on February 14th, that video was delivered to the court only, and it was not a part of the record in the sense of it was made a part of the record. The judge was departing the court, and the clerk of the court intercepted the appellate counsel and obtained the video. So our position here, your honor... Well, weren't you provided a copy of those videos, and you said to the court, we can't even see these videos, and so he ordered you to be provided with a copy that you could view. Yes, your honor. And so where we are today is we challenge the authenticity of the copy we receive. The copy we receive has some inherent issues, i.e., if you look at the time and date stamp of the video, the time and date stamp of the video we receive from counsel move back and forth. As we sit here today, we do not have what we perceive to be an authentic copy of the video to produce to the Fifth Circuit or to produce to anyone. In fact, prior to us becoming involved in this case, there was another version of the same videos that are in dispute. So as we sit here today, we don't have an accurate copy that would satisfy any metadata, a native format of the video. What we have... Do you have the video that the district judge had? We have the video that the district judge has, but we don't know that for sure, and the reason why we don't know that is because only a copy was tendered to the district judge on that particular day. At a later date, when we complained about the video we actually received, we received another version of a video. On your brief on page 28, you said you had three copies. Prior counsel gave you one, the defendants gave you one that didn't work, and then on February 23rd, you received the one that the court used in its decision. Is that correct? Those are the three videos. Is that incorrect? That's partially correct, but we're not sure because we have not been able to compare... But in your complaint, you're actually citing to the video with specific date stamps corresponding to Mr. Hayes' body cam, and is it Mr. Salinas? Yes, Your Honor. So you had a video that you used to offer the complaint. Yes, Your Honor. And so the court has dealt with this issue extensively in the context of Rule 12D. And there's a case law, significant case law, where there's fabrication of evidence. And I'd cite the court to the opinion that this court has decided in Hunter v. Cole. Well, I didn't see anywhere in the record that you described what you thought the difference in content was between the version you used to write your complaint and the version the district court used. So there's an allegation of inauthenticity that didn't seem to have been pursued. But what is the content difference between the one you used and the one the district court relies on that you also received? The content difference, as far as I can tell, is that there is, on the driver's side of the vehicle, it is not clear all of the communications that transpired between Officer Salinas. On the passenger's side of the video, all of the evidence, it skips so much that we're not certain what communications transpired. And so we don't have all the communications that occurred that led up to the five shots. I guess if we just look at your complaint, around 40, 41 to 47 of the paragraphs, it seems like you're accepting the district court's description of the video that Mr. Hayes didn't know what your client was reaching for in his pocket, that that's an undisputed fact. You state that in the complaint, I think, but correct me if I'm wrong. That Officer Hayes didn't know, as he's saying, get your hand out of the pocket, he doesn't know what Mr. Allen is actually still reaching for. Is that an undisputed fact? I believe so. But if that is, then what law would we have that wouldn't allow him to use deadly force when a passenger is reaching for an object in their pocket and the officer doesn't know what it is, but he's saying, don't do that? What's the best case? The best case we have is the case I mentioned earlier, the Hunter v. Cole case, where there's this notion of fabrication of evidence. And where we have... Believe me, we're well familiar with that case. And I understand there was a fabrication issue in that case, but it went to a different claim than the excessive force. And in that case, there was a gun, and of course you read the various decisions in the case about the disagreement about the position of the gun and all that. Here what Judge Higginson is asking is if it is undisputed that the officer, well to put it in terms of the way Judge Hughes put it, had no way of knowing what was in Allen's pocket. If that's an undisputed fact, that he had no way of knowing what was in the pocket, what's the best case that would prevent the officer from using deadly force? The best case would be, I believe, Tennessee v. Garner. Okay. Where, as the court is well aware, you had an unarmed individual who was a non-dangerous person. He wasn't... Even in Garner, he was a fleeing suspect. But you see what we're pressing at? The difficulty here is this is a suspect that the officer doesn't know isn't harmed. I would think it would be perhaps more like the Manus decision, which is the one that I think the defendant cites as their best authority. If a suspect is reaching under the seat, contrary to police orders, that's an explosive situation, and it could justify deadly force. Yes, and we would distinguish our case from the Manus case v. Lawson in that in the Manus case, unlike in the Allen case, the officer was there and the individual had their hands hiding, and they appeared to be retrieving something. In Manus v. Lawson, this individual made these furtive moves. A different type of movement as opposed to a consistent movement where we have in Allen, one consistent thing Allen does is he has his hand in his pocket reaching for what is a square-shaped flat object. When I say his hand, I mean his fingertips reaching for a square-shaped object. This case is the Manus v. Lawson. The officer, from the officer's perspective, he could not see what ... Right, but that's why I asked you at the beginning. I thought your own complaint acknowledged what the district court found was that Officer Hayes just didn't know what was in the pocket. He couldn't see either, and then things are very fast moving, and he's saying, don't stop. Get the hand out. That sounds ... Go ahead. What he could see was not what he described. That's true. What he described is very, very, very important. He described in detail in the affidavit that he provided. He described, and I will ... That affidavit is part of the video? That affidavit was submitted during the time the video was submitted, but not considered by the trial judge. In that affidavit, Officer Hayes said ... If it's not considered by the trial judge, why are you referring to it? Because what the trial judge had in his possession with the initial disclosures was the video and an affidavit from the officer saying that the individual had a white-handled gun. There was no white-handled gun because each officer, Lawson ... I'm not Lawson, but Lopez, Baker, Zimmerman, who were at the scene all said that there was no gun at the scene. All right. I want to ask you a couple of questions because this is such a confused case. In your brief at six, you say a gun was found in the vehicle weeks later while in police custody, and then in the reply at nine, you say it was a planted gun. Now, what is that based on? That's based on what we saw from the video, and on the video ... Which video? This is like who's on first. Your Honor, if you look at every one of the video consistently, you do not see a white-handled gun. Then we come back to the question I started with. You knew the court had a video. You never filed ... Apparently, never filed a motion for that video to be made part of the record. We don't have the video now, and I don't know where we go from here. Your Honor, that is the very issue we confronted because we didn't know ... Well, that's the very issue you confronted, but you don't see anything in your brief about it other than you request us to supplement with authenticated copies of the videos reviewed by all parties. I have no earthly idea what you're talking about. Your Honor, what we did was file in our motions a request to alter amended judgment, a request that the court defer his ruling so that we can resolve the authenticity issue. Not only that, Your Honor, we have medical delay, denial of medical due process issues. What I hear you saying there is that this appeal ... Is this not right for our decision because the record hasn't been worked out below? Is that what you're saying? That's not quite what we're saying. What we're saying, Your Honor, is that we should be remanded for the trial court to allow discovery to take place. No deposition of the officer was permitted. We should be allowed to do certain things, subpoenas. We should be allowed to even if it's limited to the issue of qualified immunity, to be able to conduct that rather than just the initial disclosure. Let me ask it this way. Let's assume this is up here in the summary judgment. The court granted summary judgment, qualified immunity for the officers. If we had the video, what would be the material fact dispute that we would see in your view that would lead us to say, no, there's a material fact dispute. Summary judgment was not appropriate. The material facts would be, no gun present during ... The material fact dispute. No threat, reasonable threat, no threat to the officer. Well, you're stating legal conclusions. What's the material fact dispute? The material fact dispute is whether or not a reasonable officer in the position of Mr. Justin Hayes would have engaged in conduct resulting in the shooting of John Allen five times at a traffic stop. I get you. I understand. That's a legal conclusion. I mean, a fact. The facts are John Allen was not a threat, that he posed no threat. He was not a fleeing felon. He was not- Would we see an actual dispute about what he was doing, reaching in his pocket? Would we see a dispute about that? Yes, we will. What kind of dispute? On the one hand, the dispute would be that he was reaching for a gun. On the other hand, our contention, he was reaching for his wallet and driver's license. On the other hand, they would contend that he pointed a gun at him. Our contention is there's no pointing of a gun. In fact, there's no such gun in existence. But originally, and it's fairly close to the start of this, in response to Judge Higginson, you said it's undisputed that the man kept reaching into his ... The decedent kept reaching into his pocket, and the officer was saying to him, stop reaching into your pocket. Now, is that undisputed? That portion is undisputed, Your Honor. Okay, thank you, Judge. You have rebuttal time. You have time when you- Yes, Your Honor. Thank you. Okay. Is it pronounced Mr. Borsiak? No. That's close. Okay. I think we had a similar exchange. Yes, we did. And I should remember, I apologize. Well, what is the right pronunciation? You're Mr. Higginson, right? Higginson, yes, sir. We did that just to confuse people. Oh, my goodness. And my entire life, as I said to Judge Higginson in New Orleans, I've always had to spell my name when I introduced myself so that people don't think that I'm him. Okay. Counsel, you need to clarify this video situation. I've never seen anything like this in my 30 years on the bench, that the video was provided to the judge instead of being placed in the record by you. And where do we go from here? Your Honor, let me start with the first line. I'll have to write down so I don't go blank. And that is, may it please the court, and I will do my best to answer your question. I really don't know where we go from here. I do know, and I do know that it is the record that is required to reverse. And without this video here, I don't believe that the video can be a basis for the reversal. I also don't see how there can be, the absence of the video can be a basis for the reversal. And it seems to be that the complaint is about metadata around the edges of the video that give counsel some question about the authenticity of it. But as Judge Higginson has elicited, and Judge Duncan as well, that is there any difference, regardless of what the metadata might be, maybe it's a copy of a copy. I'm just surmising here. What's the difference in the activity it shows? And even if there were not a video, even if there were not a video, and if both sides acknowledge that Mr. Allen was reaching in his pocket after being told not to do that. What if his hand, I mean, what if the video shows his hands in his pocket, and at that point, Officer Hayes says, don't reach in your pocket? What would a driver then do with the hand already in the pocket? At that point, what should you do? What a driver should do at that point is say, yes, your honor, I'm going to extract my hand, or some such words, and I'm going to slowly put my hands on the wheel. And what we have is Officer Hayes's statement that he continued to do this. This is similar to Manistee Lawson. Of course, there are some little differences here and there. Well, back on the procedural issue, I assume you provided the video because you believe it shows your officer acted objectively reasonably. We did. And therefore, would you object to us ordering the district court to supplement the record? Not at all. Not at all. So we would construe their brief with its portion saying, we'd like the video to be one of an embedded motion asking that the record reflect that the district court relied on this, the district court had it, and therefore, we would have it before us. I have no problem with that, your honor. I think that the best way the court can ever resolve any case before it is to have... The same information the district court has. Well, certainly. To have everything that's... But then the difficulty, the lurch out difficulty from this case is I take it Officer Hayes's affidavit is absolutely clear he sees a gun. And I assume you'll tell me that video that you've reviewed shows, of course, there was no gun. So why could the district court, Judge Hughes, write the very short opinion he did and mention the video threatening situation, but never mention the inconsistent testimony? Because that inconsistency is not a material one. Here's why. And a very good reference case for this is Salazar-Lamone v. City of Houston and Officer Thompson from this court from a few years ago, about 16 or 17. And just to give a very brief description of that, at nighttime at a traffic stop on a freeway, officer attempts to arrest Mr. Salazar, who was driving drunk. And Salazar did some physical contact with him, and then starts to walk around the other side of his truck toward the passenger side of the cab, where there were other people in the cab and the officer hadn't had an opportunity to search Salazar or the other people in the truck. Salazar told him, stop, stop. The man kept walking and then reached his arm down here. And in that case, here's what I'm getting at. That's just the setup. There was some dispute about whether Salazar turned to the left or turned to the right, because the officer said that he turned to the left. His hand went down, he turned to the left, he thought he was going to shoot, so he shot him. And the bullet entered on the right side, which would be inconsistent with turning to the left. You're going to lose time. Why isn't this just... Manus is the circuit law. Yes. But Manus, the gentleman's reaching under his seat. Indeed. And that's not where people put their wallets with their driver's license. The difference here is, from the passenger side, tragic that the driver's window wouldn't go down. But Officer Hayes sees the fellow reaching in his pocket. Yes. It's not under the seat. Right. Most drivers do think you've got to give your driver's license to the officer. And that might very well have been a reasonable thing for Mr. Allen to have done. However, this could be a mistake of fact in perceiving the situation. Remember, this is in the dark at a quarter to one at night. And when the officer instructs someone, gives them a legal directive, the best thing to do is for the person to follow that. Well, of course it is. But that's not what we're faced with. Now, I want to get back to the procedure in this case. Is it correct you were at a... You had filed your 12B6 motion. Then you're at some conference, and you bring the video to the conference? Is that what happened? I wasn't involved in the case until I came up on appeal. Well, do the best you can. So, yes. That seems to be what happened. I don't know how it is that it couldn't be in the record. I don't understand why it isn't. Well, it's interesting. In their brief, they requested the authenticated video, and you don't even respond to it in your brief about why it shouldn't be here or what you can do or anything else. I mean, there's just silence, and it's deafening. Well, okay. They had the video, obviously, and they relied on the video with numerous pages in their complaint and in their response to the motion to dismiss. And so they were relying on a video. And so asking for a different video without identifying what they think the problem is here is just not relevant. I mean, we don't have a problem if the court sends it back and says... Are the following two statements of fact by Judge Hughes consistent with the video if we get it supplemented? Number one, Allen stated he was getting his wallet and pressed the accelerator. So the video will reflect that the gentleman steps on the accelerator? Yes. Okay. The second one is, Hayes told Allen several times to stop reaching and to take his hand out of the wallet. Allen did not. So the video will confirm the officer several times said, stop reaching, but instead he keeps reaching. Yes. I don't know what several might mean, but multiple at least. Yes. Multiple before the shooting. Yes. Okay. And then Judge Higginson stopped out of his pocket. And then Judge Hughes said Allen did not, meaning he did not stop in Allen's pocket, so he shot him. So obviously the video's not gonna show what the officer thought. Correct. We have an affidavit, which was in the record that Judge Hughes considered. And it may well be in the record here before us. I know the video's not. But the affidavit says, or does it say, the officer thought he saw the handle of a gun? No, it says that he saw it. Well, it says he saw him even aiming it at him. Officer Hayes goes a step further. That's what the affidavit says, he saw the gun and he's aiming it at him? I'll have to refresh on that. But again... Where are you gonna refresh? This is it. Well, yeah. Then I'll just say I'm not sure. Why aren't you sure? Well, because what's in the material here, because I focused on what is material. And the material thing is, he's got his hand in here, whether... Even if thought he saw a gun, and said I saw a gun, and it turns out not to be a gun. That mistake is not material. That's why. Well, you know, I mean, in our recent decision in Colby Carson, are you familiar with the case of Baker versus Putnell? Yes. Okay. Now, in that case, you have an officer approaching a man who's sitting in a car. The officer had reason to believe there had been a shooting. Well, there was a shooting and suspected this guy might be the one. The guy reached, shot. Now, I thought it was established circuit law in the circuit that that created a fact issue on qualified immunity for the officer. Did it not? Because it was unclear whether the guy had a gun or not. Is that not established circuit law? That he has or does not have a firearm? That there was a dispute about whether the driver had or did not have a gun. No, no, it's immaterial. Having or not having a gun is immaterial to entitlement to qualified immunity. What matters, and I've cited some cases in my brief that say that, what matters, including Manistee Lawson, what matters is the appearance of having a gun. That it objectively appears to the officer at that time that he has a gun, even if he doesn't. So even if Officer Hayes was mistaken in saying I saw a gun, and it wasn't a gun. Say I saw a white handle, and it wasn't a white handle. There was no white handle gun there. It's a mistake, which goes back to why I was talking about Salazar-Lamon, turning left or turning right. And this court said in a footnote, it doesn't matter if he was turning left or right or turning at all. So that fact dispute wasn't material because what mattered was him moving his hand down here. Salazar-Lamon didn't have a weapon either, and he was shot in the back as he was walking away. But Officer Thompson in that case was entitled to qualified immunity. Now there are other surrounding facts. But the point is, you offered the video that the district court relied on. You characterized the video as one that shows him resisting the order of reaching and reaching. But we don't have that video. I think we do have in the record, yes, we do have it, the affidavit, where the driver continued pulling the gun out of his pocket, and then I observed him bringing his arm up with the gun still in his right hand. Well, of course that would be a circumstances situation. He could shoot him then. Sure, of course. But you acknowledge that that's not true. We have video evidence that disproves that. Yes, and we don't have to rely on that being true. But how can the district court credit something we don't have to grant qualified immunity, but what we do have, you're telling us is factually incorrect, which is what the officer said was why he discharged his gun. Certainly. Because the district court did have it. I don't know why it's not here. How is the affidavit in the record when you filed a 12B6 motion? I don't know how the affidavit's in the record. I know that's disturbing, your honor. I came into this way, way long after these things already That doesn't, that's really not a very good excuse. You're responsible for your case. So I just don't know what we're going to do, but I've never seen anything like it. As I've said before, I won't say it again. Well, I haven't either and I regret that I am involved in a case that's so disconcerting and at this stage of your career, your honor, it is very strange. I don't have a That seems like it would be the appropriate thing to do and then view that and decide. But as I understood it, the video include not just the video, the camera of the incident, but also some other items, including the affidavit. I'm not understanding that the video includes the affidavit. I understood there were several items included with the video. Now why, I don't know. I don't know either, your honor. Again, my focus on this is on what's material here, which counsel for plaintiffs has agreed that he was reaching in his pocket and that there was no way for Officer Hayes to know what he was pulling out. It's plausible though, given the fact that the driver's side window wouldn't go down, that as the officers are going to the other side, he's thinking I've got to get my ID. So his hand's already in his pocket. And then if a police officer yells at you, stop reaching in the pocket. I don't know what anyone can do at that point to comply because your hand's already there. If you pull it out, you could get shot. If you keep doing it, you're defying the order. This is where, and it's very sad and tragic and so I'm not wanting at all to make it sound like I'm making any light of this at all. That exactly what you said is very plausible, yes. And this is where there could be a mistake of fact in the situation. And qualified immunity covers that. Maybe another way of thinking of it is you're familiar with the Scott case where Justice Scalia says look, we've got allegations, but then we have a video. And that one it was reckless driving. And essentially the opinion of the court said look, where the video so clearly contradicts the allegations are, we don't have to blind ourselves to what we see in the video. So assuming that we order supplementation of the record and view the video, I mean maybe, I don't know if, like Judge Higginson says, if the video and the affidavit are contradictory, I'm not sure where we go with that. It's a strange, it's a strange, I haven't been on the bench, it's a strange situation. I think what you do is go with the video if it is clear, if the video is clear in terms of showing what would be a material fact that would count as a menace act. The parties by agreement can get something up to our court. If you don't know, from my standpoint, if you don't know the facts that are in the record like the affidavit, I'm not sure there's much more you need to tell us at this point, but maybe there are other questions. Nope. Okay. Well, thank you. Again, this was a 12B6 motion. Right. Suddenly it's changed to a summary judgment motion, but yet the defendant who filed the 12B6 motion didn't provide materials to make it a summary judgment motion. Apparently the materials were somehow or other taken by the court and used to convert it. So what's the solution to that? Other than you keep telling us the facts undisputed that he told them don't stick your hand in your pocket. Don't we have an obligation as an appellate court to try to know what actually took place? Yes. Yes. And if it turns out that I'm wrong about this, then what the truth should prevail, whatever that is. Well, in other words, it sounds like in a hypothetical case, we might say it was the burden of the appellant to put together an adequate record to show error. I mean, surely there are many cases that support that proposition. But here, what I hear you telling us is that we need to supplement the record so that we can actually know what the basis of the district court's decision was. Is that fair? Yes, Judge Duncan. I'm very comfortable with that because I've defended a number of officer shootings on appeal, and I always take it very seriously. Someone has lost his life or been seriously injured, and the court should have everything and know the truth. This is why I've always consented to motions to reinstate appeals that let's find out what it is and do it. Now, my understanding and my belief about this is that there is a manus act justifying this shooting, and it's very, very sad. And I'm completely comfortable with the court... Well, in order to affirm, I would imagine we'd have to find that it is undisputed that there is something in the video that shows us a manus act. There's no fact dispute, because a fact dispute on whether there's a manus act would by definition be material. That's true. That's true. So how would you go about working with the plaintiff to provide us with some documentation of what should be in the record so we'll have a complete record? If the plaintiff will just confer with me about a motion to do that, then I'll say certainly let's get it to the Fifth Circuit. I don't know why it isn't here anyway. So I think that that is the plaintiff's burden to do that, and the appellant's burden to get it up here. And so I have been agreeable all the way along, and so I will continue to be agreeable on that. And that seems like perhaps the best way to go forward. It's okay. Thank you, Counselor. Thank you, Your Honor. Ms. Cheney. And your name, Ms. Lewis. Yes, may it please the Court. I am UA Lewis, and I just want to say on the onset, I appreciate being on this campus, no relation to the other UA, Alabama. I do want to point out a few things that my esteemed counsels have represented. The Manus v. Lawson case has been described as a basis that this case should be decided upon, and that there was an actual Manus Act that occurred. However, in the Manus case, it actually details other cases along with the Manus case on why, in those particular cases, the court found that the officer acted reasonable, although there were no weapons in those cases. Now, in this case, how it differs is, one, there was no gun found in this case. However, the officer, unlike the other cases cited in Manus, those officers actually were honest and said it was a mistake and there was no gun. However, in this case, the officer, Hayes, has never, to this date, made that fact be true. To date, he still maintains that there was a gun in the car. In fact, the... Go ahead. I'm sorry. No, I mean, maybe your view is that the fact that there's an inconsistency, or if there is an inconsistency when we see the video, that might create a fact issue. Absolutely, a material fact issue. A material fact issue as to whether the quality of the act, the veracity of the officer. Absolutely. And so, I believe that Judge Barksdale was talking, I think he described it as a video, and I understood what you were saying as far as the other materials on the video. It was actually a disc that included the videos along with other materials. They were the initial disclosures that were designed to be presented to the plaintiffs at the initial conference. So, it had over hundreds of documents on that disc, along with the videos. So... I'm sorry. Did the district court designate either side as the custodian of that disc? No. No. It just collected... He intercepted the disc that was designed to be provided to the plaintiff that day at the initial conference. It was taken to custody by the court, and the city defendants were ordered to provide us with another copy for ourselves. Do I remember that the passenger made an odd reference to a gun too? There is some... So, as a part of that record, the passenger actually was immediately handcuffed, put in the back of the police vehicle, and whisked off downtown into a witness interrogation room. And in that room, she, we believe under pressure, stated, yes, there was a gun, I saw it, etc. As soon as she was released from custody, she recanted, and said there was no gun, and this did not occur. So, we don't know why there's an inconsistency with her statement, but I think that we can almost agree with Judge Hughes on that, that she discounted herself by having contradictory statements as to having a gun and not having a gun. The video that you saw when you wrote the complaint, does it contradict this statement by the district court? When Hayes arrived at the open passenger side window, he saw Alan reaching, unprompted, into his pocket and told him to take his hand out of his pocket and stop reaching. That's correct. Alan said he was getting his wallet and pressed the accelerator. Along with the brake, that's correct. Hayes said, take your foot off it. Hayes had no way of knowing what was in Alan's pocket. We don't know what Hayes could have known, and the court has no way of knowing what Hayes could have known. And Hayes did not ever say that he believed. So, you agree that Hayes couldn't have seen what was in the pocket? I don't agree with that. Well, I agree that he can see the shape and form of the pocket, and that the pants were tight, and what could actually fit in the pocket, along with the wallet. And then when we looked at Judge Hughes' statements, he told Alan several times to stop reaching, take his hand out of his pocket. Alan did not. That is true. And what's your case that, tragic as it may be, if someone insists on reaching into their pocket for something that no one knows what it is, and the officer says stop, and you say it's true, he kept reaching. What's the case that says clearly established law does not allow a police officer to shoot at that point? Well, I would say the cases that are relied upon that says it does not make that true. Now, we have... I'm just asking you for your best authority on that point. I'm pushing you because it's very important. That would be the Hunter v. Cole case in the Baker v. Putnam case. Okay. I was about to say, Baker v. Putnam was much closer to the facts here than Cole. Yes. Cole is the guy who's walking out of the woods with a gun to his head. Right. It's different than this case. Absolutely. And I want to just be clear on one thing, that we would ask if the court does decide to collect these records, and it actually should have been a part of the record to begin with because we asked for the entire record to be submitted to this court. It would be the record on Appeal 003, it'll show the docket sheet, and it'll show where the initial disclosures were deposited in the court. We had no notice, no due process notice as that this evidence would be used in deciding the motion to dismiss. Well, I've got a final question for you. Sure. We keep talking about this conference where the CD was, quote, intercepted by the court. Was Judge Hughes at that conference? He was. Thank you. Thank you. I've just got a concluding comment. I don't want to step on the presiding judge here, but what I hear, I think I hear the party saying, is that there is an agreement to supplement the record with the video evidence that was before the district court. That's what I hear. I've also heard, though, discussions about the authenticity of a video. Absolutely. I'm not telling the parties what to do, but if there's not an agreement on what the video was before the district court, we've got a serious problem. We have to know what the district court And if I can add one thing my co-counsel was alluding to, we have never seen the disc that was presented to the court. We only know what it's purported to be. We've never been able to compare that. We would like to make that clear. There should be two videos on that disc. We don't know what's there. One video has a timestamp that is consistent. The other one has a timestamp that is jumping around and is not at rest. That's why we question the authenticity of the document. Thank you, counsel. Your case is submitted.